WELLING v. KALAMAZOO LUMBER CO.

1. CUSTOMS AND USAGES—EVIDENCE—SUFFICIENCY.

Testimony of a carpenter and cabinet maker, who did not have general knowledge, of a custom in the community to use a guard on a universal saw, and who gave testimony covering merely his experience, should have been withdrawn by the court from the consideration of the jury, by an instruction that there was no competent evidence of a custom in that vicinity to use guards on such machines, in a personal injury action against his employer.

2. MASTER AND SERVANT—ASSUMPTION OF RISK.

Where plaintiff had used the saw at which he was injured on occasions previous to his injury, and knew how to operate it, the court erroneously instructed the jury that there was no contract of hire to do the machine work; plaintiff assumed such risks as were or ought to have been obvious to him, in the exercise of reasonable care.[1]

---

[1] As to assumption of obvious risk of hazardous employment, see note in 1 L. R. A. (N. S.) 272. And for assumption of risk of defective tool, machine, or appliance, where the defect is obvious, but its importance not appreciated, see note in 13 L. R. A. (N. S.) 691.

3. SAME—DEFECTIVE OR UNGUARDED MACHINERY—RISKS ASSUMED
   —NEGLIGENCE.
   Where defendant claimed and offered evidence tending to
   prove that its superior servant had told the plain-
   tiff to lower the saw, and that plaintiff had failed to
   comply with the instructions, defendant was entitled to
   have its request given, that if plaintiff was hurt because
   he did not lower the saw, and the other facts were found
   as claimed by the defense, he could not recover.

4. SAME—OBVIOUS DEFECTS—SAWDUST.
   Upon testimony having a tendency to show that an ac-
   cumulation of sawdust under the machine might have
   caused plaintiff's injury, the court did not err in refus-
   ing to instruct, the jury that plaintiff could not recover
   on that claim, since it appeared that he was not the regu-
   lar operator of the saw.

Error to Kalamazoo; Knappen, J.  Submitted June
12, 1913.  (Docket No. 52.)  Decided October 1,
1913.

Case by John C. Welling against the Kalamazoo
Lumber Company for personal injuries.  Judgment
for plaintiff.  Defendant brings error.  Reversed.

*Boudeman, Adams & Weston,* for appellant.

*Smedley, Linsey & Lillie,* for appellee.

The plaintiff, a man 48 years of age, was a car-
penter and cabinetmaker by trade.  He worked as a
cabinetmaker in Grand Rapids some six or eight
years, and as a carpenter in Kalamazoo six or seven
years.  He entered the employ of the defendant on
March 25, 1910, and was injured on August 12, 1910.
Defendant operates a lumber yard and planing mill.
In its manufacturing plant it uses various machines
and saws, including those ordinarily used in produc-
ing interior finish.  Plaintiff's work in defendant's
factory consisted in nailing up forms and doing all
kinds of stair work and carpenter work.  He worked

at a bench located some 25 feet west of the saw upon which he was injured.

This machine was what is known as a universal saw, the table was of iron, 3x4 feet, and the saw could be lowered or raised by means of a wheel or crank in the front of the table. This saw had been used by plaintiff a half dozen or dozen times during the course of his employment. Such use was only occasional and for the purpose of preparing a single piece now and then, of which plaintiff was in immediate need in the production of his work. On the morning in question the machine man who usually prepared the material for plaintiff's work was otherwise engaged. Though working upon the machine in question, he was getting out material for another carpenter. Plaintiff was instructed to build some newel posts, and to himself machine the material necessary for their construction. He went to the stock room and secured the necessary lumber, and ripped it or sawed it up upon a machine on the lower floor. He then carried it upstairs to his bench, and proceeded to nail it up. It then became necessary to prepare pieces for the "trim" of the posts. These were pieces of pine board 3 inches wide, ⅞ of an inch thick, and about 5 feet long. The machine near his bench being at that time idle, plaintiff took his boards to it for the purpose of sawing strips off—thus making them exactly 3 inches wide. He adjusted the gauge to 3 inches, threw the belt from the "loose" to the "drive" pulley, and proceeded with the work.

The man who had preceded him upon the machine had left it so adjusted that about 3 or 4 inches of the saw projected above the table. Plaintiff did not lower the saw though he testifies he knew the crank in front of the table was there for that purpose, and had seen it so used. After running through 4 or 5 pieces, and while in the act of pushing another through, the board upon which he was working

"kicked back," and struck him in the face. He momentarily lost his balance, and his left hand came in contact with the saw, severing his index and second fingers at the first joint. After ·an absence of less than two weeks, he returned to work and remained until late in October, when he was laid off.

He later . brought suit, charging defendant with negligence (1) in failing to have the saw properly guarded, according to law; (2) in permitting sawdust to accumulate to a dangerous degree under the saw; and (3) in failing to properly instruct plaintiff as to the dangers incident to the operation of the saw.

It affirmatively appeared and the court charged the jury that the saw in question was the best of its kind and in perfect repair at the time plaintiff was injured.

At the conclusion of plaintiff's case, it having been made to appear that the accident was primarily attributable to the fact that the saw was too high— projected too high through the top of the table— plaintiff's counsel asked leave to amend his declaration, charging that defendant was negligent in failing to warn and instruct plaintiff as to the necessity of lowering the saw. This amendment was permitted over defendant's objection. Plaintiff secured a judgment, which is now reviewed on writ of error.

BROOKE, J. (after stating the facts). There are some 45 assignments of error, only a few of which we will consider. We find it unnecessary to pass upon the propriety of allowing the amendment, as the case must be reversed upon other grounds.

It appeared that the factory inspector had never ordered a guard to be placed upon the saw in question. Plaintiff then endeavored to show that it was customary to use guards upon such machines in that vicinity. At the close of the evidence of the only

witness by whom it was sought to show this custom, the following occurred:

"*Mr. Adams:* I move to strike out the testimony, as far as the general custom is concerned, of the witness in the city of Kalamazoo as irrelevant, immaterial, and inadmissible.

"*The Court:* The motion should be granted; he doesn't seem to know very much about the custom.

"*Mr. Linsey:* An exception.

"*The Court:* He should have some knowledge of the general custom prevailing in the city; part is hearsay, and some of it was a good ways back.

"*Mr. Adams:* A man who has worked on machines of this kind might give expert testimony as to the machine; but now he has testified to a custom. That is not a question of experience; that is a question of knowledge. My point is that from his own showing here before the court and jury that he has not qualified himself, and shows affirmatively that he does not know what the custom is.

"*Mr. Linsey:* Here is a man who has worked in a great number of shops for 20 years on this kind of saws, and he says he knows what the custom is. In every place where he has worked they have used them, and in but one instance did he testify as to it being hearsay.

"*The Court:* The motion may be denied *pro forma.* I will think it over."

Upon this point the court charged as follows:

"I charge you that, while it is the general rule of law, it is not the duty of the master to furnish guards on a ripsaw or a saw of the kind which plaintiff was injured upon in the absence of an order made by the State factory inspector; however, if you find that plaintiff was ordered outside of the scope of his employment, and it is, as he claims, the custom to guard these kind of saws in this vicinity, and the injury resulted in the failure to have a guard upon this saw, then it was the duty of the defendant to have this saw guarded, and in the absence of a guard it would be negligence."

We are of opinion that the court should have adhered to the original ruling, and charged the jury

that there was no competent evidence of a custom to use guards on such machines in the vicinity of the city of Kalamazoo. *Ledyard* v. *Hibbard,* 48 Mich. 421 (12 N. W. 637, 42 Am. Rep. 474); *Black* v. *Ashley,* 80 Mich. 90 (44 N. W. 1120); *Eaton* v. *Gladwell,* 108 Mich. 678 (66 N. W. 598).

Upon the question of the assumption of risk, the court charged:

"I charge you, gentlemen of the jury, that if you find the plaintiff was ordered to work upon this saw by Mr. Lage, through Mr. Hice, who was acting as foreman, and the plaintiff did proceed to work upon this saw and do his own machine work in pursuance of this order, then he, working outside the scope of his regular employment, of the particular work he was hired to do, therefore, did not necessarily assume the risk of all obvious danger incident to the work upon that machine. I charge you that assumption of risk arises from the contract; the servant assuming the risk of all obvious dangers incident to the service which are known or should have been known to him. In this case there was no contract of hire to do this machine work, and, therefore, if the plaintiff was ordered to work upon this machine by the defendant's foreman, he did not by that act assume the risk."

And again:

"I charge you that the risks which the servant actually assumes are only those which are incident to the employment, and he may always require of a master response for injuries resulting from his personal negligence, that is, the master's personal negligence. Cases of this sort occur when the master exposes the servant to unsafe machinery or sends him into places where there are risks of which he is ignorant. This principle may be applicable even when the risks are apparent and fully opened to observation, provided the servant from his inexperience or other causes is incapable of fully understanding and appreciating them."

We think the first of these instructions is erroneous

and misleading. The plaintiff in undertaking to operate the machine in question did assume the risk of all obvious danger incident to the work upon that machine. In other words, considering his age and experience, he must be held to have assumed such risk as was, or in the exercise of ordinary prudence should have been, obvious to him.

The second excerpt quoted above is taken from an opinion in the case of *Chicago, etc., R. Co.* v. *Bayfield,* 37 Mich. 205, 211, 212, when plaintiff's intestate, a boy between 17 and 18 years of age, physically lame and mentally weak, employed as a common laborer, lost his life in attempting to obey an order of the master requiring him to act as brakeman. The observations of the court were peculiarly pertinent to the facts in that case, and, while technically correct as an abstract legal proposition, we are of opinion that the instruction should not have stopped where it did, but that the court should have stated the converse of the proposition, and instructed the jury that the plaintiff did assume such risk as was or should have been obvious to him.

Plaintiff produced a witness named George Hice, who was defendant's foreman at the time of the accident, and who gave plaintiff the order to machine his own material. This witness, though with apparent reluctance, testified that he had instructed plaintiff as to the necessity for lowering the saw when ripping this material so that the saw would "just make a clean cut," and also how to lower it.

Upon this point defendant preferred the following request:

"If you find that it was safer to lower the saw in order to saw what the plaintiff wanted to saw on the morning in question, and if you further find that plaintiff did not lower the saw, and because he did not, if he did not lower the saw, he was hurt, and if you further find that Hice had before the time of the

accident, whether on that day or on some other day or days, told the plaintiff to lower the saw so that the saw just came through the material to be sawed, or told him that in substance, then plaintiff cannot recover."

We think this was a proper request, and should have been given.

It is urged by defendant that the court should have instructed the jury that:

"Plaintiff cannot recover on account of any claim that he makes that sawdust was under the machine and about the saw"—citing *Willis* v. *Besser-Churchill Co.*, 126 Mich. 659 (86 N. W. 133).

We do not think that case controlling. In the instant case the plaintiff was not the regular operator of the machine, and therefore we think should not be charged with notice of the condition, as a matter of law. Of course, he was bound to take notice of a condition clearly obvious, the effect of which was, or should have been, known and appreciated by him. But it is said that it is not shown that the presence of the sawdust interfered in any way with the plaintiff, or caused or contributed in any way to his injury. There is some testimony, though not very convincing, to the effect that the presence of the sawdust may have contributed to the accident.

Other errors assigned have been examined, but require no discussion.

The judgment is reversed, and a new trial ordered.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.