GUTOV *v.* CLARK.

1. DAMAGES—BUILDING CONTRACTS—BREACH.

When a substantial compliance is made with the provision of a contract for the construction of a building which proves to be one that is adapted to the purpose for which the owner intended it, and only slight additions or alterations are required to finish the work according to contract, the defects being remediable at a reasonable expense, and without interfering with the rest of the structure, the measure of damages is such a sum as is necessary to make it conform to the plans and specifications. But when there are defects that cannot be remedied without the entire demolition of the building; and it is worth less than it would have been if it had been constructed according to contract, the measure of damages is the difference between the value of the building actually tendered and that which was required to be constructed.[1]

2. SAME—NEW TRIAL—VERDICT.

And on motion for a new trial a verdict of $1,900 for failure to comply with the provisions of the construction contract is *held*, to be supported by evidence for the plaintiffs.

3. EVIDENCE—APPEAL AND ERROR—HARMLESS ERROR.

Where counsel asked a question that was proper enough, and the witness, in answering, did not offer a responsive answer, which the court declined to strike out, the error, if any, not being prejudicial, was not a ground for reversal.

4. SAME—CONTRACTS.

The court did not err in excluding an answer to the question whether or not the defendant had any trouble or if a threat was made by the people in the street to prevent him from putting up the building as specified by the construction contract, where the issue was whether or not the building conformed to the plans and specifications, and, if not, what were plaintiffs' damages.

---

[1]As to measure of damages for defects or omissions in the performance of a building contract, see note to 39 L. R. A. (N. S.) 591.

5. SAME—IRRELEVANT QUESTIONS.
　　It was not error to exclude an interrogatory as to the amount of insurance plaintiffs carried, or one covering how much rent plaintiffs got for the building.

Error to Wayne; Mayne, J., presiding. Submitted January 12, 1916. (Docket No. 110.) Decided March 30, 1916.

Assumpsit by Nathan Gutov and others against Walter H. Clark for breach of a building contract. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Covert & Campbell,* for appellant.

*Baubie & Baubie,* for appellees.

BROOKE, J. The following statement of fact is quoted from brief of counsel for the appellant:

"On May 31, 1913, the three plaintiffs, who are themselves all carpenters and builders, executed a contract with the defendant, by the terms of which the defendant was to furnish all material and erect for the plaintiffs for the sum of $5,800, according to the plans and specifications, a four-family frame flat building on a lot 40x112 feet owned by the plaintiffs on Crane avenue, Detroit. The plaintiffs deeded this lot to the defendant who was to negotiate a construction loan, and, after the erection of the flat, give a land contract back to the plaintiffs for the purchase of the premises at $6,700, the value of the lot being put at $900. The defendant at once began the construction of the building and had it practically completed, when, on November 14, 1913, the plaintiffs took possession of the building and moved into the flat, occupying continuously since then three of the four apartments themselves, and renting continuously since then the fourth apartment for the first two months at $16 a month, and thereafter at $14 a month. The plaintiffs took possession of the building under protest, claiming that it was not properly completed according to plans and speci-

fications, but that the defendant had threatened to sell the building and they were obliged to move in to protect their rights.

"The contract provides that the building should be completed by September 1, 1913, but no claim is made for delay, the entire claim of the plaintiffs being based on alleged defects in material and workmanship. There is no serious dispute but that the building substantially fulfills the purpose for which it was intended —that is, a four-family flat building to be used entirely for residential purposes.

"The defendant claims that the building is substantially what the plans and specifications call for, and that any variances were caused by changes made at the request of the plaintiffs. The contract provides that Mr. Swirsky, the architect, was to be the superintendent of construction, but the plaintiffs did not furnish an architect, claiming that the defendant said that he didn't need an architect. The defendant claims that the plans and specifications were faulty, and did not clearly indicate what was to be done and that this fact caused some of the alleged variances from the plans and specifications. The defendant also claims that the plaintiffs definitely accepted the building as complying with the plans and specifications when they moved into it. The defendant claims further that certain extras were used for which he has not been paid, but he has withdrawn these from consideration in this case.

"The defects claimed by the plaintiffs are chiefly as follows: The pier foundations under the building are 9x9 in size and made of cement instead of 12x12 of brick, and the pier foundations are not deep enough causing the building proper to settle 1½ inches to 1¾ inches, and causing the front porch to slope back toward the building 2 inches to ̄ 3 inches, instead of sloping away from the building. The cement used is not properly mixed and crumbles. The inside finish was not properly sandpapered. Some of the siding was put on crooked, and much of it is poplar instead of white pine. Single-coil heaters were used instead of double-coil, and two-piece sinks instead of one-piece. The joists are not bridged. Four windows and frames in the front of the building are left out. The

roof sags in the middle. A decorative wooden circle is left off the front of the building, and the cornice returns are not properly extended, and there is artificial stone instead of cut stone used for chimney coping. The front doors are $1\frac{3}{4}$ inches pine instead of 2 inches oak, and double strength American glass was used instead of plate glass. The water pipes are exposed in one kitchen. The back porches have a cheaper grade of flooring than specified, and the back stairs were flimsy and had to be removed. The doors are left off the closets. The water pipe connection with the water main is a $\frac{3}{4}$ inch instead of 1 inch. The studding are 22 feet instead of 24 feet."

Plaintiffs secured a verdict and judgment for $1,900. Defendant reviewing said judgment in this court, discusses the following questions:

(1) The charge of the court on the rule for the measure of damages was misleading.

(2) The verdict is contrary to the great weight of evidence, and a new trial should have been granted on this ground.

(3) The verdict is grossly excessive, and a new trial should have been granted on this ground.

(4) There was error in the ruling made on the admission and rejection of certain testimony.

1. Excerpts from the charge of the court upon the measure of damages follow:

"If the building varied from the plans and specifications to such an extent that the building would have to be destroyed and rebuilt practically so as to make it conform to the terms of the contract, including the terms and specifications, then the rule of damages would be as follows:

"The plaintiff would be entitled to recover (the difference between) the value of the building actually taken possession of by the plaintiffs on November 14, 1913, at a value not exceeding the contract price and the value of the building as it would have been had it been completed in accordance with the contract which includes the plans and specifications not exceeding the contract price.

"Now the plaintiffs in this case do not claim that the building when completed would exceed the contract price, consequently the contract price will determine the value of the building which should have been furnished by the defendant to the plaintiffs. If you find that there was a breach of contract on the part of the defendant, the plaintiffs in this case will be entitled to recover under their theory or claims the difference between the value of the building not exceeding the contract price actually furnished; that is, the building as it was on the grounds on November 14, 1913, and the building which would have been there had the contract been literally complied with.

"In other words, it is practically the difference between what the value of the building would have been had it been built in accordance with the terms of the contract for them actually at the contract price, and the building which was actually presented, which they actually took possession of November 14, 1913, and you could not consider the value of the building of which they took possession as being worth more than the contract price. Plaintiffs claim it would be worth much less than the contract price; the defendant claims that it was worth the contract price. It is the claim of the defendant that even under the rule given you as the measure of damages, if you find for the plaintiffs, that the building they actually furnished the plaintiffs was equal in value to the contract price of it, that the house which plaintiffs took possession of was worth the contract price for the house.

"Now under this law so as to comply with the position of the defendant, inasmuch as the defendant has elected, not to take a verdict at your hands for extras, having determined the value of the building of which they took possession, you will subtract, if you find for the plaintiffs, the amount of extras, the value of the extras as you find them to be from the present value or the value on November 14, 1913, of the house or building of which the plaintiffs actually took possession.
*   *   *

"If you find that there was a substantial compliance, that it would not be necessary to demolish the house, that changes could be made without destroying practi-

cally the building and having to rebuild it again, then the amount that would be necessary to make these particular or several items comply with the terms of the contract, would be the proper measure of damages in accordance with the charge I have given you."

At the conclusion of the charge, the following colloquy took place:

"Gentlemen, on account of the length of time it has taken to try this case, I want to be very careful in submitting my charge to the jury. Have I covered all the points that are necessary as you think, Mr. Baubie?

"*Mr. Baubie:* I think so, but I will take a formal exception to the general charge, is all.

"*Mr. Covert:* If your honor please, it just occurs to me at this time—

"*Mr. Baubie:* Are not the plans and specifications and contract to be handed to the jury for inspection in case they want to refer to them?

"*The Court:* I will hear Mr. Covert now.

"*Mr. Covert:* If the jury should find, if they get to the point of damages, if they should find the value of that building, having moved into it—that plaintiffs having moved into it, that it was worth $5,800, the verdict must be for the defendant.

"*The Court:* That is what I have charged them. It may be stated in that way. You are to take the last statement of Mr. Covert as the law, because while it is stated in other words it is what I intended to charge you."

Counsel for appellant say, with reference to the charge of the court, that:

'We admit that the court in the case at bar gave the proper rule for the measure of damages, but we claim that it was stated in such a way that it was clearly misleading to the jury; that the jury got the idea that they were to allow plaintiffs the necessary expense of tearing down certain parts of the building and reconstructing it."

We are unable to understand exactly why counsel should make this contention. From the quoted portion

of the charge, *supra,* and from an examination of the charge as a whole, it would seem that the court below submitted the question of damages carefully and instructed the jury properly as to the applicable law. The rule is that where the contract is substantially complied with, and the building is such a one as is adapted for the purpose for which it was constructed, and only slight additions or alterations are required to finish the work according to the contract, the defects being remediable at a reasonable expense, and without interfering with the rest of the structure, the measure of damages is such a sum as is necessary to make the building conform to the plans and specifications. But, where the defects are such that they cannot be remedied without the entire demolition of the building, and the building is worth less than it would have been if constructed according to the contract, the measure of damages is the difference between the value of the building actually tendered, and the reasonable value of that which was to be built. *Eaton* v. *Gladwell,* 121 Mich. 444 (80 N. W. 292). See, also, *Blakeslee* v. *Holt,* 42 Conn. 226; *School Directors* v. *Robertson,* 65 Ill. App. 298; *Clark* v. *Inhabitants of Russell,* 110 Mass. 133.

2 and 3. It is the claim of appellant that the verdict is grossly excessive and against the great weight of the evidence. A motion for a new trial was made upon these and other grounds, and was denied by the trial court. In denying said motion the trial court said:

"The amount of the verdict, though possibly somewhat liberal, is within the limits of the testimony of both expert and layman."

We have examined the record with care and find that there is testimony, which, if believed, would have warranted a much larger verdict than the one rendered. It further appears that the jury upon the re-

quest of both parties visited the premises and made a careful inspection of them after having heard the testimony as to the alleged defects. We are unable to say from this record that the verdict is either grossly excessive or against the weight of the evidence.

4. There are 57 assignments of error based upon alleged erroneous rulings touching the admission or exclusion of testimony. The first of these assignments discussed in the brief for appellant arises out of the following:

"*Q.* From the examination that you made at that time can you tell this court and jury what you consider the difference between the building, a building of this kind that should be furnished under the plans and specifications and the building you found there that day, I ask you what the difference was?

"*A.* Well, the difference would be over $2,000 to replace it."

An exception was taken to this question and answer, upon the ground that it was not based upon the proper measure of damages. The court said: "Let it stand for the present." The question, it seems to us, was entirely proper, though it may be said that the answer was not responsive. The witness was not asked what it would cost to replace the building, but was asked the difference in value between the one constructed and the one required under the specifications. In view of the charge upon the measure of damages, we are of opinion that the ruling, if erroneous, was not prejudicial to defendant's rights. Many other assignments of error grow out of somewhat similar questions.

Error is assigned upon the exclusion of the following testimony:

"Did you have any trouble or any threat made by the people of the street there to prevent you from putting up that kind of a building?

"*A.* I did."

It is the contention of the appellant that the rejection of this testimony and other testimony upon the same question was erroneous and prejudicial because it prevented defendant from putting his case

"before the jury in the best light, and they had an important bearing upon the question as to whether or not defendant was trying to put up the building according to contract."

We are unable to see how the answers to these questions had any bearing upon the issue between the parties. Defendant did in fact erect a building. The question at issue was whether the building conformed to the plans and specifications, and, if not, what plaintiffs' damages were by reason thereof.

The court excluded an inquiry made of plaintiffs as to how much insurance was carried upon the building, and as to how much rent was being received from the building. The ruling was proper—neither question had any bearing upon the issue presented.

The other assignments under this head of the argument have been examined, but are not meritorious.

Upon review of the entire record, we are satisfied that no reversible error was committed, and the judgment is therefore affirmed.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.